1

2

3

4                              UNITED STATES DISTRICT COURT

5                             NORTHERN DISTRICT OF CALIFORNIA

6

7       LUIS MEDINA,                                  Case No.  15-cv-02708-HSG

                        Petitioner,
8                                                      ORDER DENYING PETITION FOR
                 v.                                    WRIT OF HABEAS CORPUS,
9                                                      DENYING CERTIFICATE OF
        RAYMOND MADDEN,                                APPEALABILITY
10
                        Respondent.
11

12

13              Before the Court is the above-titled *pro se* petition for a writ of habeas corpus, filed

14      pursuant to 28 U.S.C. § 2254 by petitioner Luis Medina, challenging the validity of a judgment

15      obtained against him in state court.  Respondent has filed an answer to the petition,[1] and Petitioner

16      has filed a traverse.  For the reasons set forth below, the petition is denied.

17                                      I.  PROCEDURAL HISTORY

18              On February 19, 2013, a Santa Clara County jury found Petitioner guilty of sexual

19      penetration of a child 10 years of age or younger (Cal. Penal Code § 288.7(b)); forcible lewd acts

20      on a child under the age of 14 (Cal. Penal Code § 288(b)); and lewd acts on a child under the age

21      of 14 (Cal. Penal Code § 288(a)).  Clerk's Transcript ("CT") 595–600.[2]  On May 6, 2013, the trial

22      court sentenced Petitioner to state prison for a determinate term of three years, followed by an

23      indeterminate term of 15 years to life.  CT 632–37.

24              On July 31, 2014, the California Court of Appeal affirmed the judgment in an unpublished

25      opinion.  *People v. Medina*, No. H039625, 2014 WL 3752826 (Cal. Ct. App. Jul. 31, 2014).  On

26

27      [1] The Answer is filed in the Court's electronic filing system ("ECF") at Docket No. 15, and the
        exhibits to the Answer are filed at Docket No. 16.

28      [2] The Clerk's Transcript has been filed as Exhibits 1A – 1C to the Answer.

United States District Court
Northern District of California

1    October 15, 2014, the California Supreme Court denied review.  Answer, Ex. 9.

2         On February 2, 2015, Petitioner filed a petition for a writ of habeas corpus in the California

3    Supreme Court.  Answer, Ex. 12.  On April 15, 2015, the California Supreme Court denied the

4    petition in a summary denial.  Answer, Ex. 13.

5         On June 1, 2015, Petitioner filed the instant federal petition for a writ of habeas corpus

6    pursuant to 28 U.S.C. § 2254.

7                              **II. STATEMENT OF FACTS**

8         The following factual background is taken from the July 31, 2014 opinion of the

9    California Court of Appeal:[3]

10        Karrie Doe is the daughter of Wendy H., who is also the mother of two younger
         children. At the time of the two incidents leading to the charges against defendant,
11       Karrie was 10 years old; she was 12 years old at the time of trial. Wendy and her
         children lived with three other people, including a young woman named Itzl M.

12       Defendant was the live-in boyfriend of Wendy's sister, Lorena H. Lorena had a son,
13       M.E., who was about seven years old at the time of the two incidents leading to the
         charges. Defendant, Lorena, and M.E. lived together in a one-bedroom unit. In the
14       bedroom, there was a big bed and a small bed.

15       The incidents leading to the charged offenses both occurred at defendant's and Lorena's
         home, on February 28, 2011 and in early March of 2011.

16
         A. Karrie's Initial Disclosures
17       On March 11, 2011, Itzl noticed that Karrie seemed sad when she came home from
         school. Karrie told Itzl that defendant had abused her. Itzl, who had been abused herself
18       as a child, said that Karrie had to tell her mother, Wendy, about the abuse. In either their
         initial conversation or during a second conversation a few days later, Karrie told Itzl
19       that defendant had grabbed her buttocks, grabbed her vagina, and put her hand on his
         penis. Karrie also said that defendant wanted to put his penis inside her.
20
         That evening, Lorena offered to care for Wendy's children at Lorena and defendant's
21       home. Itzl then called Wendy aside and told her that defendant had been touching
         Karrie. Karrie was present; she began crying and told Wendy that defendant had
22       touched her vagina the prior weekend. Karrie specified that defendant's hand had gone
         underneath her pajamas or that defendant had lowered her pajamas. Defendant told her
23       that if she did not say anything, he would buy her a Nintendo video game player and
         take her to Chuck E. Cheese. Karrie also told Wendy that defendant had touched her
24       buttocks when she was on a computer in Lorena and defendant's bedroom on Lorena's
         birthday.
25

26

27   _____
     [3] This summary is presumed correct.  *Hernandez v. Small*, 282 F.3d 1132, 1135 n.1 (9th Cir.
28   2002); 28 U.S.C. § 2254(e)(1).

                                        2

Wendy told Lorena about Karrie's disclosure. Lorena then confronted defendant, who claimed the touching had occurred by accident.

B. Karrie's Statements to Police

Karrie was interviewed by the police shortly after her initial disclosures. A videotape of the interview was played for the jury at trial.

Karrie first told the police about the incident in which defendant touched her vagina. Karrie had been lying down in the big bed when defendant came and lay down next to her. Her sister and M.E. were in the small bed playing video games. Her sister and M.E. could not see her from where they were sitting.

When defendant started touching her, Karrie asked what he was doing. Defendant said, "I'm just playing with you" and touched her more. Defendant touched her vagina and buttocks. Defendant's hand went inside her underwear, and one finger went "[a] little" inside her vagina. Defendant "poked" her vagina with his fingernail. The inside of her vagina hurt for three days afterwards. Karrie reiterated that defendant's finger went inside of her vagina.

Defendant then turned her around, "stuck his penis out," and tried to put his penis into Karrie's vagina. He rubbed it on her vagina and then on her thigh. Karrie felt something "watery" come out of defendant's penis, and she later saw some "pinkish-whitish" stuff. Defendant stopped rubbing his penis on Karrie when she began crying. Defendant again said that he was "just playing." Defendant told her he would take her to Chuck E. Cheese "'if you don't say nothing.'" Defendant also said he would buy her a Nintendo if she "'stay[ed] quiet.'" He also promised to take Karrie and the other children to Bounce–A–Rama.

Karrie also told the police about a prior incident, which had occurred on Lorena's birthday. Defendant had touched her buttocks, underneath her shorts and underneath her underwear, for 40 seconds to one minute.

C. Sexual Assault Response Team Examination

Following her interview with the police, Karrie was examined by Mary Ritter, a physician's assistant and the primary examiner at the Center for Child Protection and Department of Pediatrics at Valley Medical Center.

Karrie complained that after the touching, her vagina hurt and itched when she urinated. Ritter found no evidence of a penetrating injury, but she explained that when an examination is conducted more than 72 hours after an incident, it is typical for any bruises to have healed and for no DNA to be found. Ritter did notice a brown mark inside Karrie's labia, which could have been either a mole or a resolving bruise. She had Karrie return for follow-up examinations and determined that the mark was a mole.

D. Karrie's Trial Testimony

At trial, Karrie first described the incident in which defendant touched her buttocks. The incident occurred on February 28, 2011, which was Lorena's birthday. Karrie and M.E. were playing on a computer in the bedroom at defendant and Lorena's home. Defendant came up behind Karrie and touched her buttocks, over her clothes.

Karrie also described the second incident, during which defendant touched her vagina. The incident occurred in the morning, after Karrie had spent the night at defendant's home. She was lying down in the big bed, and her sister and M.E. were playing video

games on the small bed. Defendant came into the bedroom and lay down on the big bed next to Karrie. Defendant pulled Karrie's pajama bottoms down halfway, touched Karrie's leg, then touched her vagina. Defendant put his hand under Karrie's underwear. She felt defendant's fingernail poke her, outside her vagina. She did not feel defendant's finger go inside her vagina. She tried to push defendant's hand away. At some point, Karrie felt something "weird" and "squishy" on her leg. She got up and went to the bathroom, where she checked herself for bleeding and saw "gooey stuff" on her leg.

Karrie testified that defendant did not tell her not to tell anyone about what had happened, but defendant did say he would take her to Chuck E. Cheese or Bounce–A–Rama and that he would buy her a Nintendo.

On redirect examination by the prosecutor, Karrie acknowledged telling the police that defendant had put a finger "a little bit" inside her vagina, but she no longer remembered if that was true. On recross examination by the defense, Karrie was asked if defendant put his finger in her vagina; Karrie responded, "[T]hat didn't happen."

Recalled by the prosecution the next day, Karrie acknowledged speaking with the prosecutor on the phone the night before. The prosecutor had been concerned about the clarity of her questions. Karrie confirmed that she knew where a tampon goes and indicated the spot on a diagram. Then, shown a hot dog bun, Karrie made a mark on the inside of the bun to indicate where she felt defendant's fingernail. When she told Detective Smith that defendant put his finger in her vagina "a little," she meant "partly on the inside," and not in the area where a tampon goes.

E. Defendant's Statement to Police

At trial, the defense played a videotape of defendant's interview with police. The prosecution also presented evidence of that interview through the testimony of the two officers who participated.

Defendant claimed that "nothing" happened the night of Lorena's birthday (i.e., when, according to Karrie, defendant touched her buttocks).

Defendant acknowledged that Karrie and her sister had stayed overnight at his home around March 6, 2011. Defendant admitted that he had got into bed next to Karrie the next morning. He noticed she did not have a Nintendo and said he would buy her one for her birthday. Thinking Karrie seemed sad or bored, defendant also said he would take her to Chuck E. Cheese. Defendant then started tickling Karrie in the lower stomach area. Karrie pushed his hand down, causing him to accidentally touch her vagina outside of her clothing. Defendant admitted that his fingernails were longer that day.

The police told defendant they knew that he put his finger inside Karrie's vagina and that Karrie needed to know why he did it. The police also told defendant that Karrie had a cut on her vagina and that defendant's DNA was found in the cut. They told defendant they knew he had also grabbed Karrie's hand and tried to put it on his penis. Defendant denied touching the inside of Karrie's vagina and denied grabbing her hand.

*Medina*, 2014 WL 3752826, at *1–*3.

### III. DISCUSSION

**A.     Standard of Review**

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).  Additionally, habeas relief is warranted only if the constitutional error at issue "'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence.  "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Williams*, 529 U.S. at 412.  A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent."  *Id.* at 405–06.  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "[A] federal habeas court may not issue

the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.  "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous."  *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005).  The final state court decision from the California Supreme Court summarily denied Petitioner's petition for review.  The California Court of Appeal was the last reasoned state court decision that addressed the first three claims Petitioner raises in the instant petition.  Accordingly, in reviewing these three claims, this Court reviews the California Court of Appeal's decision.  *See Ylst*, 501 U.S. at 803–04; *Barker*, 423 F.3d at 1091–92.[4]  Petitioner's fourth  claim — ineffective assistance of counsel for failure to investigate — was first raised in his state habeas petition, which the California Supreme Court summarily denied.  Accordingly, in reviewing this fourth claim, this Court reviews the California Supreme Court's summary denial which is presumed to be an adjudication on the merits and covered by § 2254(d).  *Harrington v. Richter*, 562 U.S. 86, 99 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.") (one-sentence order denying habeas petition analyzed under §2254(d)).

**B.     Petitioner's Claims**

Petitioner alleges four claims for habeas relief: (1) the trial court erred when it allowed the

---

[4] Although *Ylst* was a procedural default case, the "look through" rule announced there has been extended beyond the context of procedural default.  *Barker*, 423 F.3d at 1092 n.3 (citing *Lambert v. Blodgett*, 393 F.3d 943, 970 n.17 (9th Cir. 2004), and *Bailey v. Rae*, 339 F.3d 1107, 1112–13 (9th Cir. 2003)).  The look through rule is applicable here as the Ninth Circuit has held that "it is a common practice of the federal courts to examine the last reasoned state decision to determine whether a state-court decision is 'contrary to' or 'an unreasonable application of' clearly established federal law" and "it [is] unlikely that the Supreme Court intended to disrupt this practice without making its intention clear."  *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir.), *amended*, 733 F.3d 794 (9th Cir. 2013).

United States District Court
Northern District of California

United States District Court
Northern District of California

victim to express her opinion of the Petitioner's credibility;[5] (2) the trial court committed

prejudicial error when it allowed the prosecution to reopen its examination of the witness;[6] (3) trial

counsel was ineffective for failing to object to the prosecution's use of a hot dog bun for

demonstrative purposes and for failing to conduct an adequate pretrial investigation; and (4) trial

counsel was ineffective for failing to investigate.

### 1.    Victim's Testimony Regarding Petitioner's Credibility

Petitioner alleges that the trial court committed prejudicial error when it allowed the victim

to offer an opinion as to Petitioner's credibility.  The state appellate court rejected this claim as

follows:

> A. Opinion Testimony
> Defendant contends the trial court erred by allowing Karrie to offer an opinion as to whether
> defendant was telling the truth when he denied committing the charged offenses.
>
> 1. Proceedings Below
> During further redirect examination of Karrie, the prosecutor asked, "Karrie, if someone
> described this incident in the bed and said that [defendant] was just tickling you, was just
> playing with you and his touching your vagina was just an accident, would that be the truth or
> would that be a lie?" Trial counsel objected, "That's an improper question."
>
> The trial court ordered a sidebar. At the sidebar, defendant asserted, "The question is asking
> one witness to express an opinion about the credibility of another witness." The prosecutor
> responded, "Her credibility has been questioned." The trial court overruled defendant's
> objection, stating, "I think she's allowed to ask that."
>
> The prosecutor then repeated her question, asking, "Ka[rrie], if somebody said that
> [defendant] came into the bed and he was just tickling your stomach and playing, playing with
> you and it was just an accident that he touched your vagina over the clothes, would that be the
> truth or would that be a lie?" Karrie responded, "That would be a lie."
>
> 2. Analysis
> As defendant notes, a witness generally may not give an opinion as to a defendant's guilt or
> innocence (*see People v. Torres* (1995) 33 Cal.App.4th 37, 46) nor give an opinion about "the
> veracity of another person's particular statements" (*People v. Zambrano* (2004) 124

---

[5] In the petition, Petitioner describes this claim as "prejudicial error for the court to allow Karrie
Doe to offer an opinion as to petitioner's guilt or innocence", Pet. at 8, but in the appendix to his
first claim, Petitioner argues that it was error for the trial court to allow a witness to comment on
another witness' credibility, *id.* at 6 and 8–12.  Because the victim's statement addressed the
veracity of a statement rather than the guilt or innocence of Petitioner, the Court construes the
claim as arguing that it was prejudicial error for the prosecution to ask the witness to opine on
Petitioner's credibility.
[6] In his traverse, Petitioner expands on this claim and argues that the recall testimony also
constituted prosecutorial misconduct and violated Plaintiff's due process rights because the
prosecution coerced the victim into admitting penetration which the prosecution knew to be false
testimony.  Traverse at 5–7.

Cal.App.4th 228, 239). However, "'were they lying' questions" must be examined "in context." (*People v. Chatman* (2006) 38 Cal.4th 344, 384 (*Chatman*).) Someone who is "a percipient witness to the events at issue has personal knowledge whether other witnesses who describe those events are testifying truthfully and accurately. As a result, he [or she] might also be able to provide insight on whether witnesses whose testimony differs from his [or her] own are intentionally lying or are merely mistaken." (*Id.* at p. 382.) Consequently, "were they lying" questions "should not be permitted when argumentative, or when designed to elicit testimony that is irrelevant or speculative. However, in its discretion, a court may permit such questions if the witness to whom they are addressed has personal knowledge that allows him [or her] to provide competent testimony that may legitimately assist the trier of fact in resolving credibility questions." (*Id.* at p. 384.)

In this case, Karrie was "a percipient witness to the events at issue" and had personal knowledge whether any statements about those events were truthful and accurate. (*Chatman*, *supra*, 38 Cal.4th at p. 382.) By asking Karrie whether it would be true if someone said that defendant touched her accidentally, the prosecutor was not eliciting testimony that was irrelevant or speculative, because Karrie was competent to give an opinion on whether the touching was intentional or accidental. Moreover, the prosecutor did not ask Karrie specifically whether defendant was lying, only whether "someone" who said that the touching occurred accidentally would be lying. Nothing in the record indicates Karrie knew that defendant had claimed the touching was an accident. Thus, the prosecutor did not actually elicit an opinion about defendant's credibility. Under the circumstances here, the trial court could reasonably determine that Karrie's response would "legitimately assist the trier of fact" and that her testimony did not constitute improper opinion about credibility, guilt, or innocence. (*Id.* at p. 384.) The trial court did not abuse its discretion by permitting Karrie to give the challenged testimony.

*Medina*, 2014 WL 3752826, at *4.

Respondent argues that Petitioner is not entitled to habeas relief on this claim because this claim solely alleges an error of state law; because there is no clearly established federal law, as determined by the Supreme Court, prohibiting the admission of witness testimony regarding the credibility of other witnesses; and because the admission of the victim's testimony did not violate due process.

The Court liberally construes the petitioner's allegation that it was error to allow the victim to offer an opinion as to Petitioner's credibility as stating three separate claims for habeas relief.

Plaintiff's first argument for why the victim's testimony constituted error is that "California law prohibits a witness from opining that the defendant is guilty or innocent. Such evidence is inadmissible and irrelevant." Pet. at 9. Respondent is correct that this claim is solely a claim of state law error and therefore not cognizable on federal habeas. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("federal habeas corpus relief does not lie for error of state law") (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

United States District Court
Northern District of California

Plaintiff's second argument for why the victim's testimony constituted error is that "it was improper and judicial error of the trial court to allow Karrie [Doe] to opine as to the credibility [of Petitioner] as this usurped the jury's function and the opinion was improper." Pet. at 8.  In support of this claim, Plaintiff cites to *United States v. Sanchez*, 176 F.3d 1214 (9th Cir. 1999).  *Id.* at 10.  In *Sanchez*, the Ninth Circuit joined other circuits in holding that it was prosecutorial misconduct to force a defendant to call a witness a liar, or to otherwise offer evidence regarding a witness's credibility.  *Sanchez*, 176 F.3d at 1219.   Accordingly, the Court liberally construes Petitioner's claim of trial court error as a federal claim of prosecutorial misconduct[7] and address the prosecutorial misconduct claim below.

Plaintiff's third argument for why the victim's testimony constituted error is that the admission of the victim's opinion testimony denied him the fundamentally fair trial guaranteed by the Due Process Clause.  *See* Docket No. 16 at 4 ("some of the state law violations, also violate the petitioner's constitutional rights, for instance, the right to a fair trial, protected by the Fifth Amendment, as well as the due process (sic).").  Liberally construed, this argument states a cognizable federal due process claim. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999) ("Even where it appears that evidence was erroneously admitted, a federal court will interfere only if it appears that its admission violated fundamental due process and the right to a fair trial.").  However, Petitioner raised this argument for the first time in his traverse.  The Court, in an exercise of its discretion, declines to consider this new argument because it appears to be unexhausted.  *See Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002) (district court "has discretion, but is not required to" consider evidence and claims raised for first time after filing

---

[7] Petitioner also cited to *Sanchez* in his petition for review to the California Supreme Court, Docket No. 15-7 at 171–72, thereby fairly presenting and exhausting his federal claim of prosecutorial misconduct based on the prosecutor allegedly eliciting witness testimony commenting on Petitioner's credibility.  *See Dye v. Hofbauer*, 546 U.S. 1, 4 (2005) (federal due process claim based on prosecutorial misconduct was fairly presented where the text of the brief cited the Fifth and Fourteenth Amendments and federal cases concerning alleged violation of federal due process rights in the context of prosecutorial misconduct; the "brief was clear that the prosecutorial misconduct claim was based, at least in part, on a federal right"); *see also Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (litigant wishing to raise a federal issue can easily indicate federal law basis for claim in a state court petition by citing in conjunction with the claim a case deciding such a claim on federal grounds).

United States District Court
Northern District of California

1    of petition).  This claim was not presented in either Petitioner's petition for review to the

2    California Supreme Court[8] or in his state habeas petition.[9]  Accordingly, Petitioner's due

3    process claim arising out of the admission of the victim's opinion testimony was not exhausted

4    as required by 28 U.S.C. § 2254(b), (c) because it was not fairly presented to the state courts.

5    *See Picard v. Connor*, 404 U.S. 270, 277 (1971) (insufficient to raise only the facts supporting

6    the claim; rather, "the constitutional claim . . . inherent in those facts" must be brought to the

7    attention of the state court); *Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir. 2013) (petitioner

8    does not exhaust all possible claims stemming from a common set of facts merely by raising

9    one specific claim); *Koerner v. Grigas*, 328 F.3d 1039, 1046–48 (9th Cir. 2003) (holding even

10   though factual basis for claim was submitted to state court, claim itself not fairly presented to

11   that court because facts were used exclusively to support another claim)).  Although a *pro se*

12   habeas petition is "given the benefit of liberal construction," *Porter v. Ollison*, 620 F.3d 952,

13   958 (9th Cir. 2010), "a liberal interpretation . . . may not supply . . . [a] claim that [was] not

14   initially pled."  *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

15   Moreover, as discussed *infra*, the victim's opinion testimony did not render Petitioner's trial

16   fundamentally unfair.

17            Accordingly, the Court will address whether Petitioner is entitled to federal habeas

18   relief on his claim that it was prosecutorial misconduct for the prosecutor to ask the victim to

19   offer an opinion as to Petitioner's credibility.

20                    a.        **Prosecutorial Misconduct**

21            Prosecutorial misconduct is cognizable in federal habeas corpus.  The appropriate

22   standard of review is the narrow one of due process and not the broad exercise of supervisory

23   power.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  A defendant's due process rights are

24   violated when a prosecutor's misconduct renders a trial "fundamentally unfair."  *Id.*; *Smith v.*

25   _____

26   [8] In his petition of review, Petitioner alleged that allowing the admission of the victim's opinion
     testimony violated California laws and constituted prosecutorial misconduct.  *See* Docket No. 15-7
27   at 169–73.
     [9] In his state habeas petition, Petitioner argued that counsel was ineffective and that the
28   prosecution had unlawfully entrapped him and engaged in outrageous conduct.  *See* Docket No.
     15-7 at 211–22.

1 | *Phillips*, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged

2 | prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor").

3 | Petitioner correctly points out that a number of federal courts have held that it is

4 | improper for a prosecutor to ask a witness to testify about the veracity of another witness. *See*

5 | *Sanchez*, 176 F.3d at 1219–20 (citing cases) (prosecutorial misconduct where prosecutor

6 | elicited defendant's testimony that U.S. marshal was a liar; witness's opinion that defendant

7 | was a liar; other people's hearsay statements; and inadmissible evidence of prior bad acts);

8 | *United States v. Sullivan*, 85 F.3d 743, 749–50 (1st Cir. 1996); *United States v. Fernandez*, 145

9 | F.3d 59, 64 (1st Cir. 1998); *United States v. Gaind*, 31 F.3d 73, 76–77 (2d Cir. 1994) (questions

10 | asking whether other witnesses were mistaken do not constitute prosecutorial misconduct,

11 | while questions asking if other witnesses are liars may constitute prosecutorial misconduct); *see*

12 | *also United States v. Harrison*, 585 F.3d 1155, 1158–59 (9th Cir. 2009) ("black letter law that a

13 | prosecutor may not ask a defendant to comment on the truthfulness of another witness").[10]

14 | However, these circuit decisions are not clearly established federal law for purposes of §

15 | 2254(d)(1) review. *See Williams*, 529 U.S. at 412 (for purposes of § 2254(d)(1) review, clearly

16 | established federal law refers to the holdings of the Supreme Court's decisions as of the time of

17 | the relevant state-court decision); *Carey v. Musladin*, 549 U.S. 70, 76–77 (2006) (circuit

18 | precedent may not create clearly established federal law on issue Supreme Court has not yet

19 | addressed). Petitioner cites no clearly established Supreme Court precedent, and the Court is

20 | aware of none, that provides that a defendant's right to due process is violated when a

21 | prosecutor questions a witness about the defendant's credibility. Without condoning the

22 |

---

23 | [10] These cases assessed the prosecutor's questions under the plain error standard of review and
24 | found no constitutional error in such questions. *See, e.g., Sullivan*, 85 F.3d at 750 (viewed in
     | context, counsel asking witness to comment on the veracity of another witness' testimony did not
25 | affect outcome of trial); *Fernandez*, 145 F.3d at 64 (prosecutor's questioning defendant as to his
     | opinion of government agent's veracity did not affect the outcome of the trial and was not plain
26 | error); *Gaind*, 31 F.3d at 76–77 (asking witness whether other witnesses might have been
     | "mistaken" in their testimony did not constitute prosecutorial misconduct); *Harrison*, 585 F.3d
27 | 1159–60 (no prejudice where prosecutor's improper questioning highlighted a credibility
     | determination that defendant was asking jury to make); *Sanchez*, 176 F.3d at 1219 (declining to
28 | determine whether prosecutor's improper questions constituted reversible error; reversing
     | conviction on other grounds).

United States District Court
Northern District of California

1    prosecution's tactics, the Court therefore concludes that the state court's decision rejecting

2    Petitioner's claim of prosecutorial misconduct is not contrary to, or based on an unreasonable

3    application of, clearly established law.

4           Moreover, after conducting a thorough and independent review of the underlying

5    record, the Court also concludes that the state court's decision rejecting Petitioner's claim of

6    prosecutorial misconduct was not based on an unreasonable determination of the facts.  When a

7    defendant contends that a prosecutor's question rendered his trial fundamentally unfair, it is

8    important "as an initial matter to place th[e] remarks in context." *Darden*, 477 U.S. at 179.  In

9    this case, in the victim's direct examination, she described the details of the touching, but did

10   not specifically state that the touching was intentional.  RT 194–202 (Petitioner laid down next

11   to her; Petitioner touched her vagina with his long nails for eight to ten minutes; victim felt

12   something squishy on her leg).  On cross-examination, defense counsel challenged

13   inconsistencies between the victim's trial testimony and prior statements, RT 213 and 218, and

14   challenged the victim's recollection of the touching, RT 230–31.  The prosecutor's question to

15   the victim regarding whether the touching was accidental followed the cross-examination and is

16   reasonably understood as an attempt to emphasize for the jury that the victim was clear that the

17   touching was intentional even if she was uncertain on other details.  The question simply made

18   explicit what was implicit in the victim's testimony — if she was telling the truth about the

19   touching being intentional, any testimony about the touching being accidental would be a lie.

20          Finally, the jurors were properly instructed that they were the sole arbiters of a witness'

21   credibility:

22          You alone must judge the credibility or believability of the witnesses.  In deciding
            whether testimony is true and accurate, use your common sense and experience.  You
            must judge the testimony of each witness by the same standards, setting aside any bias
23          or prejudice you may have.

24   RT 465.  Because the jury is presumed to have followed its instructions, *Weeks v. Angelone*,

25   528 U.S. 225, 226 (2000), the instruction ameliorated any prejudice from the prosecutor's

26   question.  Viewing the victim's testimony as a whole, the Court finds that the prosecutor's

27   question did not render the trial fundamentally unfair or have a substantial or injurious effect on

28   the verdict.

12

1    Applying the highly deferential standard of AEDPA, this Court concludes that the state

2    court's rejection of this claim was not contrary to, or an unreasonable application of, clearly

3    established federal law; nor was it an unreasonable determination of facts, *cf. Harrison*, 585

4    F.3d at 1159, 1164 (finding misconduct where improper questioning "was an organizational

5    theme for the prosecutor's entire cross-examination" and included at least 26 separate improper

6    questions, but affirming conviction given the jury instructions and strength of the evidence).

7    Accordingly, Petitioner is not entitled to habeas relief on this claim.

8    **2.    Recall of Victim**

9    Petitioner claims that the trial court allowed the prosecutor to reopen her examination of

10   the witness in violation of state evidentiary laws, Pet. at 17–18; and that the prosecutor committed

11   misconduct when re-examining the victim because the prosecutor knowingly elicited false

12   testimony by encouraging the victim to testify that Petitioner had touched her labia, *id*. at 15–17.

13   The state appellate court rejected Petitioner's state law claim as follows:

B. Recall of Victim
Defendant contends the trial court erred by allowing the prosecutor to recall Karrie to provide further testimony about penetration.

Before addressing this claim, we briefly review the applicable law regarding sexual penetration of a child age 10 year or younger. Section 288.7, subdivision (b) provides: "Any person 18 years of age or older who engages in oral copulation or sexual penetration, as defined in Section 289, with a child who is 10 years of age or younger is guilty of a felony and shall be punished by imprisonment in the state prison for a term of 15 years to life." Section 289, subdivision (k)(1) provides: "'Sexual penetration' is the act of causing the penetration, however slight, of the genital or anal opening of any person or causing another person to so penetrate the defendant's or another person's genital or anal opening for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object." The penetration may be of the labia majora and not the vagina. (*See People v. Quintana* (2001) 89 Cal.App.4th 1362, 1367 (*Quintana*).)

1. Proceedings Below
Karrie was the last witness to testify on February 11, 2013. On that day, Karrie testified that she felt defendant's fingernail poke her, outside her vagina, and she denied that defendant's finger went inside her vagina. Karrie also acknowledged telling the police that defendant's finger had been inside her vagina and that the inside of her vagina hurt because defendant's fingernail had poked her. Following Karrie's testimony, the trial court informed her that she was "subject to recall."

When trial resumed on February 13, 2013, the prosecutor asked to recall Karrie. The prosecutor explained, "Yesterday, thinking about Ka[rrie's] testimony, I felt like I had not asked a very clear question of her. So the People are seeking to recall her to clear up this one issue of what 'inside' means to her." The prosecutor explained she had talked to Karrie following her testimony and had recorded the conversation, then forwarded the recording to

13

trial counsel.

Trial counsel noted that pursuant to Evidence Code sections 774 and 778, a witness may not be recalled and "reexamined as to the same matter without leave of court." Trial counsel asked the court "not to grant leave to reopen." He argued: "Essentially, the People are asking for a do-over." Trial counsel noted that the prosecutor had conducted redirect examination of Karrie as to the penetration issue. Trial counsel suggested that the prosecutor had provided Karrie with "additional information" ("essentially an anatomy lesson") following her testimony.

The prosecutor responded that it would be "soundly within the discretion of the court" to allow Karrie's recall. The prosecutor argued, "A trial is a search for the truth. And the jury has an absolute right to hear all of the evidence in the clearest fashion possible. I did not present my question to Ka[rrie] very clearly. And upon reflection of how I asked that question and how she's been asked it in the past, we haven't given this witness a fair opportunity to explain to a jury what she means or what she was talking about."

The prosecutor acknowledged that during the conversation she had with Karrie after Karrie's testimony, she had explained to Karrie the difference between the vaginal cavity and the labia majora. The prosecutor had asked Karrie whether defendant's hand went "'where a Tampon goes,'" and Karrie had said, "'no.'" The prosecutor had then asked if defendant's hand had gone "'where the lips are,'" and Karrie had said "'yes, a little.'"

Trial counsel asserted that the prosecutor had asked Karrie leading questions that suggested the prosecutor wanted Karrie to say that defendant's finger went "in between the lips."

The trial court noted that the decision whether to allow Karrie's recall was a matter within its discretion. The court found it was "important that all of the facts come out, that the jury be given all of the facts so they can make a decision." The court then ruled that Karrie could be recalled, that the prosecutor could only be asked "direct questions" by the prosecutor, and that the defense would have "great latitude" to cross-examine Karrie about her conversation with the prosecutor.

As noted above, upon recall, Karrie made a mark on the inside of a hot dog bun to indicate where she felt defendant's fingernail, and she explained that when she told Detective Smith that defendant put his finger in her vagina "a little," she meant "partly on the inside," and not in the area where a tampon goes.

2. Analysis

"After a witness has been excused from giving further testimony in the action, he [or she] cannot be recalled without leave of the court. Leave may be granted or withheld in the court's discretion." (Evid. Code, § 778.) "A witness once examined cannot be reexamined as to the same matter without leave of the court, but he [or she] may be reexamined as to any new matter upon which he [or she] has been examined by another party to the action. Leave may be granted or withheld in the court's discretion." (Evid. Code, § 774.)

A trial court may permit a witness to be recalled when recall would clarify inconsistencies in the witness's testimony. (*People v. Thomas* (1992) 2 Cal.4th 489, 542.) On the other hand, a trial court may refuse to allow recall of a witness if further examination "would necessarily be cumulative and repetitious of matters already inquired into." (*People v. Flynn* (1958) 166 Cal.App.2d 501, 512.)

Here, permitting Karrie to be recalled was not "arbitrary or capricious" and did not "'"""exceed[ ] the bounds of reason"""'" under the circumstances. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.) Recalling Karrie to testify about her understanding of female genitalia would help clarify inconsistencies in her testimony, since she testified that defendant's finger

did not go inside her vagina but that she had previously told police defendant's finger went inside her vagina. Although the parties had asked Karrie whether defendant's finger had penetrated her vagina, they had not asked whether defendant's finger had penetrated her "genital ... opening." (§ 289, subd. (k)(1); *see Quintana, supra*, 89 Cal.App.4th at p. 1367 ["a 'genital' opening is not synonymous with a 'vaginal' opening"]; *People v. Karsai* (1982) 131 Cal.App.3d 224, 233 (*Karsai*) [victim testified that defendant's penis went between her "'lips'" but not "inside her vagina"], disapproved on other grounds by *People v. Jones* (1988) 46 Cal.3d 585, 600, fn. 8.) Recalling Karrie to be questioned about her understanding of the difference between the labia and the vaginal cavity, and about whether defendant's finger had penetrated the labia but not the vaginal cavity, was not cumulative to her prior testimony. Under the circumstances, we find no abuse of discretion.

*Medina*, 2014 WL 3752826, at *5–*6.

To the extent that Petitioner argues that the recall of the victim violated sections 352 and 778 of the California Evidence Code, *see* Pet. at 17–18, the Court agrees with Respondent that this claim fails to state a claim for federal habeas relief. "[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (emphasis in original). The Supreme Court has repeatedly held that the federal habeas writ is unavailable for violations of state law or for alleged error in the interpretation or application of state law. *See Swarthout*, 562 U.S. at 219; *Estelle*, 502 U.S. at 67–68.

Respondent also correctly argues that Petitioner has failed to exhaust this particular claim of prosecutorial misconduct arising out of the recall of the victim and her subsequent alleged false testimony.   In his petition for review to the California Supreme Court, Petitioner only argues that recalling the victim to the stand violated state law.  Docket No. 15-7 at 203–04.  Petitioner does not reference prosecutorial misconduct; nor does he cite to any cases, federal or state, that discuss prosecutorial misconduct.  Accordingly, Petitioner's prosecutorial misconduct claim arising out of the recall of the victim was not fairly presented to the state courts, and was not exhausted as required by 28 U.S.C. § 2254(b), (c).  *See Picard*, 404 U.S. at 277 (insufficient to raise only the facts supporting the claim; rather, "the constitutional claim . . . inherent in those facts" must be brought to the attention of the state court); *Gulbrandson*, 738 F.3d at 993 (petitioner does not exhaust all possible claims stemming from a common set of facts merely by raising one specific claim).

In any event, this claim of prosecutorial misconduct fails on the merits as well.[11]  Petitioner

---

[11] The court may deny a habeas petition on the merits even if it is unexhausted.  *See* 28 U.S.C. § 2254(b)(2); *Runningeagle v. Ryan*, 686 F.3d 758, 777 n.10 (9th Cir. 2012).

United States District Court
Northern District of California

argues that the prosecutor solicited false testimony in the following manner:  Petitioner alleges that the victim clearly testified during both the direct examination and the cross-examination that there had been no penetration, and that the prosecution recalled the victim for the sole purpose of eliciting the false testimony that Petitioner had penetrated her.  When a prosecutor obtains a conviction by the use of testimony which he knows or should know is perjured, it has been consistently held that such conviction must be set aside if there is any reasonable likelihood that the testimony could have affected the judgment of the jury.  *See United States v. Agurs*, 427 U.S. 97, 103 (1976).  "A conviction obtained using knowingly perjured testimony violates due process, even if the witness's perjured testimony goes only to his credibility as a witness and not to the defendant's guilt." *United States v. Houston*, 648 F.3d 806, 814 (9th Cir. 2011) (citing *Mooney v. Holohan*, 294 U.S. 103, 211 (1935)).  "To prevail on a claim [that the prosecution offered false or misleading testimony], the petitioner must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) . . . the false testimony was material."  *See United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003).  A petitioner must establish a factual basis for attributing knowledge that the testimony was perjured to the government. *See Morales v. Woodford*, 388 F.3d 1159, 1179 (9th Cir. 2004).

Petitioner's claim fails because he has failed to establish that the prosecution presented false evidence.[12]  There is nothing in the record that supports Petitioner's assertion that Petitioner did not

---

[12] Petitioner argues that the prosecution's alleged solicitation of false testimony is similar to entrapment which courts have found constitutes outrageous conduct requiring reversal of a conviction. Pet. at 24–25.  As discussed above, there is no evidence that the prosecution solicited false testimony.  In addition, the cases cited by Petitioner in support of this argument — *United States v. Harris*, 997 F.2d 812 (1993); *United States v. Russell*, 411 U.S. 423 (1973); *United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995) — do not entitle him to federal habeas relief for the following reasons.
      *Harris* and *Boyd* are not clearly established federal law because they are not decisions issued by the Supreme Court of the United States.  28 U.S.C. § 2254(d).  Moreover, both *Harris* and *Boyd* are inapplicable to the instant case.  *Harris* limits the application of the outrageous government conduct principle, emphasizing that the "amorphous defense of outrageous government conduct is . . . rarely accepted" and finding that the police did not engage in outrageous conduct when the defendant engaged in an illegal drug transaction in part due to the police officer's promise that defendant would receive rock cocaine for arranging the drug transaction and defendant was a drug addict.  *Harris*, 997 F.2d at 816.  In *Boyd*, the Seventh Circuit affirmed the district court's grant of a new trial, finding that there was a reasonable probability that if not for the cumulative weight of misleading testimony and *Brady* violations, the defendants would have been acquitted.  *Boyd*, 55 F.3d at 245–46.  Specifically, the court found

penetrate the victim's labia, an act that which can constitute penetration for purposes of the criminal charge, or that the prosecution knew that Petitioner had not penetrated the victim's labia.  Cal. Penal Code § 288.7(b) (sexual penetration is defined by section 289 of the California Penal Code); *People v. Quintana*, 89 Cal.App.4th 1362, 1371 (2001) ("contact with the hymen as well as the clitoris and the other genitalia inside the exterior of the labia majora constitutes 'sexual penetration' within the meaning of section 289").  The only evidence Petitioner has presented to support his claim that he did not touch the victim's labia is his own allegation and the inconsistencies in the victim's testimony.  However, the victim's testimony was not contradictory.  During the police interview, the victim stated that Petitioner had put his finger inside her vagina.  Docket No. 15-1 at 36 and 51.  During the initial direct examination, the victim testified that Petitioner touched her outside her vagina.  RT at 195.  On redirect, the victim testified that she couldn't remember if it was true whether Petitioner put "one finger a little bit inside [her] vagina."  RT at 228.  On re-cross-examination, the victim agreed that it would have been accurate for her to tell the police detective that she felt Petitioner's finger on her vagina, but not in her vagina.  RT 230–31.  During the recall examination, the victim testified that Petitioner had not penetrated her vaginal cavity and had only touched her labia.  RT 255–26.  This last statement was not inconsistent with the victim's prior statements because the prior statements did not specify whether the victim understood the labia to be part of her vagina.  In addition, inconsistencies in testimony are insufficient to establish that the prosecutor knowingly used perjured testimony.  *United States v. Zuno-Arce*, 44 F.3d 1420, 1422–23 (9th Cir. 1995) (prosecutor's presentation of inconsistent testimony does not establish a constitutional violation).  In such cases, the question whether witnesses lied or erred in their perceptions or judgments is properly left to the fact finder.  *See id.*; *see also United States v. Scheffer*, 523 U.S. 303, 313 (1998) ("A fundamental premise

---

that the prosecution had elicited false testimony and omitted prejudicial and relevant information. *Id.* at 244–45.  In the instant case, there is no evidence that the victim's testimony was false.

While *Russell* is clearly established federal law, the Supreme Court limited the scope of the entrapment defense in *Russell* and found that the government conduct fell short of outrageousness when the government agent contributed to a criminal scheme that was already in progress. *Russell*, 411 U.S. at 436 ("It is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play.").

The Court finds meritless Petitioner's claim that the solicitation of false testimony is analogous to the outrageous government conduct that requires a reversal of his conviction.

United States District Court
Northern District of California

United States District Court
Northern District of California

of our criminal trial system is that the <u>jury</u> is the lie detector.") (internal quotations omitted; emphasis in original).  There is no evidence in the record establishing that the victim's testimony that Petitioner's finger penetrated her labia was false.  Accordingly, the prosecution did not commit misconduct and there was no due process violation.  After carefully reviewing the record, the Court concludes that Petitioner is not entitled to federal habeas relief on his claim that recalling the victim constituted error.

### 3.     Use of Demonstrative Exhibit

Petitioner claims that the trial court committed prejudicial error when it allowed the prosecution to use a hot dog bun for demonstrative purposes.  He also alleges that trial counsel was ineffective when he failed to object to the use of this demonstrative exhibit.  The state appellate court rejected Petitioner's ineffective assistance of counsel claim with respect to the use of the hot dog bun as a demonstrative exhibit as follows:

C. Use of Demonstrative Exhibit

Defendant contends the trial court erred by allowing the prosecutor to use a hot dog bun as a demonstrative exhibit during Karrie's testimony on recall. [FN 2]

> FN 2: We have reviewed photographs of the hot dog bun. We note that the defense subsequently used the hot dog bun during Mary Ritter's cross-examination; Ritter made a blue mark on the hot dog bun at the approximate site of the mole she noticed inside Karrie's labia.

1. Forfeiture/Ineffective Assistance

As defendant acknowledges, trial counsel did not object when the prosecutor used the hot dog bun during Karrie's testimony, and thus the issue is forfeited. (*See People v. Partida* (2005) 37 Cal.4th 428, 434.) Defendant seeks to avoid the consequences of forfeiture by asserting that trial counsel was ineffective for failing to object.

"To prevail on a claim of ineffective assistance of counsel, the defendant must show counsel's performance fell below a standard of reasonable competence, and that prejudice resulted. [Citations.] When a claim of ineffective assistance is made on direct appeal, and the record does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation. [Citation.] Even where deficient performance appears, the conviction must be upheld unless the defendant demonstrates prejudice, i.e., that '"but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"' [Citations.]" (*People v. Anderson* (2001) 25 Cal.4th 543, 569 (*Anderson*); *see also Strickland v. Washington* (1984) 466 U.S. 668, 687–688 (*Strickland*).)

We will assume that reasonable trial counsel would have objected to the use of the hot dog, and we turn to the question of whether defendant has demonstrated prejudice—that is, whether it was reasonably probable that an objection would have been successful. (*See*

18

*Anderson*, *supra*, 25 Cal.4th at pp. 569, 587; *Strickland*, *supra*, 466 U.S. at pp. 687–688.)

2. Analysis

"It is entirely proper for a prosecutor to use objects similar to those connected with the commission of a crime for purposes of illustration. [Citations.]" (*People v. Barnett* (1998) 17 Cal.4th 1044, 1135.) "To be admissible, demonstrative evidence must satisfy two requirements: first[,] the evidence must be a reasonable representation of that which it is alleged to portray; and second, the evidence must assist the jurors in their determination of the facts of the case, rather than serve to mislead them. [Citations.]" (*People v. Rivera* (2011) 201 Cal.App.4th 353, 363.) A trial court's decision to permit the use of demonstrative evidence is reviewed for abuse of discretion. (*Id.* at p. 362.)

Defendant contends that the hot dog bun "in no way resembled a vagina, or vaginal lips specifically, either in size, shape, color, material, etc." He also contends the hot dog bun was "not used to illustrate Karrie's testimony, but rather to create testimony by her that she had been touched inside her vaginal lips...." (Underscoring omitted.) We disagree. Although the hot dog bun did not constitute an anatomically correct model of the female genitalia, the hot dog bun was a reasonable representation of the labia, which are often referred to as the "lips" of the vagina. [FN 3] (*See Karsai*, *supra*, 131 Cal.App.3d at p. 233.) The hot dog bun enabled Karrie to distinguish between the outside and inside of her "genital ... opening" (§ 289, subd. (k)(1)) and thus assisted the jurors in their determination of the facts of the case. The hot dog bun was not prejudicial or misleading. Under the circumstances, it was not reasonably probable that an objection to the hot dog bun would have been successful. (*See Anderson*, *supra*, 25 Cal.4th at pp. 569, 587; *Strickland*, *supra*, 466 U.S. at pp. 687–688.)

> FN 3: Indeed, the defense later used the hot dog bun for this purpose. (*See* footnote 2, *ante*.)

*Medina*, 2014 WL 3752826, at *7 (footnotes in original).

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.* The right to effective assistance of counsel applies to the performance of both retained and appointed counsel without distinction. *See Cuyler v. Sullivan*, 446 U.S. 335, 344–45 (1980). In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687–88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine

United States District Court
Northern District of California

confidence in the outcome.  *Id.*

Petitioner argues that the admission of the hot dog bun was more prejudicial than probative and that counsel's failure to object to the admission therefore constituted ineffective assistance of counsel.   The state appellate court found that the hot dog bun was admissible under state law. *Medina*, 2014 WL 3752826, at *7.  The Court is bound by this state law determination by the state court.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (state court's interpretation of state law binds federal habeas court); *Mendez v. Small*, 298 F.3d 1154, 1158 (9th Cir. 2002) ("A state court has the last word on the interpretation of state law.").  The failure to object to evidence that is admissible under state law cannot be ineffective assistance of counsel.  *See Hebner v. McGrath*, 543 F.3d 1133, 1137 (9th Cir. 2008).  Petitioner is not entitled to habeas relief on this claim.  The state appellate court's rejection of this claim was not an unreasonable application of *Strickland*.  *See Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999) (to show prejudice under *Strickland* for failure to file a motion, petitioner must demonstrate that such objection would have been successful and that it would have resulted in a more favorable outcome).

### 4.      Failure to Investigate

Petitioner also claims that trial counsel was ineffective for failing to investigate.  This claim was raised for the first time in Petitioner's state habeas petition, which the California Supreme Court denied in a summary denial.  Specifically, Petitioner alleges that trial counsel failed to investigate the "two kids" in the bedroom at the time of the second incident; failed to investigate or obtain a statement from the victim's mother or Petitioner's wife;[13] failed to interview both prosecution and defense witnesses prior to trial; failed to visit the scene of the crime; and failed to hire an investigator.  Pet. at 22 and Docket No. 15-7 at 213–18.  Beyond the failure to investigate, Petitioner argues that trial counsel was also ineffective in the following ways:  trial counsel failed to present favorable evidence that was in counsel's possession; tried to

---

[13] In his state habeas petition, Petitioner argues that trial counsel failed to investigate the "victim's mother (appellant's wife)."  Docket No. 15-7 at 213.  Since the victim's mother is the sister of appellant's wife, the Court liberally construes Petitioner's claim as arguing that trial counsel rendered ineffective assistance of counsel when he failed to investigate both the victim's mother and his wife.

United States District Court
Northern District of California

coerce Petitioner into accepting a plea bargain; failed to communicate with Petitioner prior to trial; had no trial strategy and was generally unprepared for trial; did not call witnesses to testify in Petitioner's defense; and failed to present mitigating evidence at the sentencing hearing.  Docket No. 15-7 at 213–18 and Traverse at 8–9.[14]  Finally, Petitioner argues that even if each individual error and omission did not constitute ineffective assistance of counsel, the cumulative errors and omissions made by trial counsel constitute ineffective assistance of counsel.  Docket No. 15-7 at 217–18.

A defense attorney has a general duty to make a reasonable investigation or to make a reasonable decision that makes particular lines of investigation unnecessary.  *See Strickland*, 466 U.S. at 691; *Hinton v. Alabama*, 134 S. Ct. 1081, 1088 (2014).  However, the duty to investigate and prepare a defense is not limitless.  *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001).  An attorney is not required to interview every conceivable witness or to examine every possible piece of evidence.  *Id.  Strickland* directs that "'a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'"  *Silva v. Woodford*, 279 F.3d 825, 836 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 691).  "'To determine whether counsel's [failure to investigate] prejudiced the outcome of the trial, [the Court] must compare the evidence that actually was presented to the jury with that which would have been presented had counsel acted appropriately.'"  *See Thomas v. Chappell*, 678 F.3d 1086, 1102 (9th Cir. 2012) (citing *Karis v. Calderon*, 283 F.3d 1117, 1133 (9th Cir. 2002)) (finding reasonable probability that jury would have acquitted petitioner where there was only circumstantial evidence of petitioner's guilt and the additional evidence would have corroborated the defense theory of an alternative killer).

Petitioner claims that if trial counsel had visited the bedroom, trial counsel would have been able to demonstrate that the room was too small for the second incident to happen without someone observing it.  However, such a demonstration would have been unnecessary due to M.E.'s statement, which established that he could clearly see the victim on the bed where he was

---

[14] Petitioner raised these arguments in his state habeas petition but did not specifically raise these arguments in the instant petition.

playing video games.  Moreover, the ability of the victim's sister and M.E. to view Petitioner and the victim while they were on the bed was not at issue.  The victim's sister told the police that she did not remember the day of the second touching, CT 394–97, and that she never saw Petitioner and the victim lying on the bed together, CT 402–03.  M.E. stated that he remembered the day of the second touching.  He told the police that he could see the victim on the bed from where he was playing video games; that Petitioner laid down next to the victim; that the victim was not crying after Petitioner got up from the bed and left the room; that no shoe was thrown in his direction; and that he heard a noise from the bed while Petitioner was in the bed with the victim, but could not describe the noise.  CT 378–85.  Trial counsel's decision not to visit the bedroom was reasonable under these circumstances, and did not constitute deficient performance by counsel. *Hinton*, 134 S. Ct. at 1088 ("'In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.'") (quoting *Strickland*, 466 U.S. at 688).

The remainder of Petitioner's assertions regarding trial counsel's failure to investigate are purely conclusory.  Petitioner fails to identify what evidence trial counsel would have obtained if trial counsel had interviewed the two children who were in the bedroom at the time of the second incident, and how it would have assisted Petitioner's case if trial counsel interviewed the victim's mother or Petitioner's wife prior to trial.  Petitioner also fails to identify which prosecution and defense witnesses trial counsel should have interviewed and what trial counsel would have learned from such interviews.  Petitioner also fails to identify what trial counsel would have learned by hiring an investigator.  Vague assertions that trial counsel was ineffective fail to meet the burden set forth in *Strickland*.  *See Ceja v. Stewart*, 97 F.3d 1246, 1255 (9th Cir. 1996) (rejecting *Strickland* claim where petitioner failed to explain what compelling evidence would have been uncovered had counsel interviewed more witnesses); *see also Cooks v. Spalding*, 660 F.2d 738, 740 (9th Cir. 1981) (mere speculation insufficient to demonstrate prejudice for ineffective assistance of counsel claim); *United States v. Taylor*, 802 F.2d 1108, 1119 (9th Cir. 1986) (general claim that careful scrutiny of record would demonstrate that trial counsel did not adequately prepare defense insufficient to meet the burden set forth in *Strickland*).  In addition, a claim of

United States District Court
Northern District of California

22

failure to interview a witness cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel, *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986), as was the case here where the two children had already provided statements to the police. Nor does the duty to investigate and prepare a defense require that every conceivable witness be interviewed. *Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir. 1995). Finally, Petitioner has also failed to meet his burden under *Strickland* because he has failed to identify how hiring an investigator would have changed the course of the trial. *See Bragg*, 242 F.3d at 1088 (no ineffective assistance where petitioner did "nothing more than speculate that, if interviewed," a witness might have given helpful information); *Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000) (no ineffective assistance of counsel where there was no evidence in the record that a helpful witness actually existed and petitioner failed to present an affidavit establishing that the alleged witness would have provided helpful testimony for the defense); *see also Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) ("When [counsel's] alleged deficiency is a failure to investigate, the movant must provide the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced.") (internal quotation marks omitted).

Petitioner's other claims regarding ineffective assistance of counsel — counsel failed to present favorable evidence that was in counsel's possession; failed to communicate with Petitioner prior to trial; had no trial strategy and was generally unprepared for trial; did not call witnesses to testify in Petitioner's defense; failed to present mitigating evidence at the sentencing hearing; and tried to coerce Petitioner into accepting a plea bargain — are similarly vague and conclusory. Petitioner does not identify what favorable evidence was in counsel's possession that was not presented, what witnesses should have been called to testify, or what mitigating evidence should have been presented. It is also unclear how trial counsel failed to communicate with Petitioner, and how this alleged failure prejudiced Petitioner. Assuming arguendo that the plea bargain would not have not benefitted Petitioner, Petitioner was not prejudiced by trial counsel's failed attempt to coerce Petitioner into accepting the plea bargain.

United States District Court
Northern District of California

1    In addition, the record contradicts Petitioner's claims that trial counsel failed to investigate,

2    had no trial strategy and was otherwise unprepared for trial.  The record indicates that trial counsel

3    conducted an investigation of the victim's family history and behavioral issues.  Trial counsel's

4    knowledge that, at the time the touchings took place, the victim and her mother had a difficult

5    relationship, RT 133 (cross-examining victim's mother as to whether victim expressed anger at

6    her mother and whether victim resented mother for leaving her father), and the victim had

7    discipline and behavioral issues, RT 128–30, indicate that trial counsel had investigated the case.

8    Trial counsel also employed the strategy of casting doubt on the victim's recollection of the

9    second touching incident by highlighting inconsistencies between the victim's statements to police

10   and her trial testimony and by presenting testimony that neither the victim's sister nor M.E.

11   witnessed the touching.  Trial counsel also attempted to introduce evidence of the victim's

12   relationship with her mother and alleged attention-seeking behavior to further undermine the

13   victim's credibility.   Trial counsel was also aware of the layout of the room and the furniture in

14   the room at the time of the second touching.  The record does not support Petitioner's allegations

15   of ineffective assistance of counsel.[15]

16        Finally, the Court also finds that Petitioner's cumulative error argument is without merit.

17   Under the cumulative error doctrine, the combined effect of multiple trial errors may give rise to a

18   due process violation if it renders a trial fundamentally unfair, even if each error considered

19   individually would not warrant relief.  *See Parle v. Runnels*, 505 F.3d 922, 928 (9th Cir. 2007)

20   (characterizing this principle as clearly established by the Supreme Court).  The Ninth Circuit has

21   applied this principle in the context of *Strickland* and has held that prejudice may result from the

22   cumulative effect of multiple deficiencies by counsel.  *Harris v. Wood*, 64 F.3d 1432, 1438 (9th

23   Cir. 1995).  Whether or not this principle constitutes clearly established federal law, it is

24   inapplicable in a case such as this one, in which Petitioner has not shown any deficiencies by

25

26   ―――――――――――――――
     [15] Petitioner himself acknowledges that there is no evidence in the record before the Court that
27   trial counsel was ineffective in failing to investigate.  Traverse at 10 ("Petitioner disagrees with
     Respondent's answer but at the same time Petitioner understands that Respondent is answering
28   from what is on the record and Petitioner's claim is on what the defense counsel's (sic) failed to do
     and most of it would not be on the record.").

defense counsel. Petitioner's case is distinct from *Harris*, in which the court found eleven instances of deficient performance by counsel, eight of which were undisputed, and was "compelled to find that [the deficiencies] cumulatively prejudiced Harris's defense." *Harris*, 64 F.3d at 1439.

For the foregoing reasons, Petitioner is not entitled to habeas relief on his claims of ineffective assistance of counsel.

## C.        Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

### IV. CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

The Clerk shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED.**

Dated: 11/29/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California